UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RICHARD DARRYL MILLER, JR.,

Petitioner,

v.

FRED FIGUEROA, Warden,

Respondent.

No.  2:15-cv-1059 MCE GGH

FINDINGS AND RECOMMENDATIONS

*Introduction and Summary*

A jury convicted defendant Richard Miller of carjacking (count one), second degree robbery (count two), assault with a firearm (count three), theft of a firearm (count four), and two counts of felon firearm possession (counts five [Smith & Wesson handgun] and six [Beretta handgun] ).  (Cal. Pen.Code, §§ 215, subd. (a), 211, 245, subd. (a)(2), 487, subd. (d), former 12021(a)(1).)  The jury also found, as sentence enhancements, that defendant personally used a firearm during the commission of counts one through three. (§§ 12022.53, subd. (b), 1203.06, subd. (a)(1), 12022.5, subd. (a)(1).)

Simply re-filing a portion of his state appellate brief as the argument for his federal habeas proceeding, petitioner raises three issues:

1

1         1.  Insufficient evidence that the intent to carjack, as defined in state law, was formed;

2         2.  Insufficient evidence that petitioner unlawfully possessed a handgun;

3         3.  Failure to instruct on a lesser offense.

4    Petitioner's federal habeas fares no better than his state appeal, and the undersigned recommends

5    that this petition be denied.

6    *Background Facts*

7    On December 9, 2008, Rodrick Davis drove home from work in his Mustang. Davis

8    worked as an armored car driver and his job-required, loaded Smith & Wesson
handgun rested on the front passenger seat. Davis backed into a parking spot at

9    his apartment complex.

10   While parking, Davis observed a Chevrolet Suburban parked nearby, and also
noticed that his Mustang's left headlight appeared out. When Davis exited the

11   Mustang to check the light, two men suddenly appeared.

12

13   One man shouted, "Nice car." Davis responded, "Thank you." Then a third man,
defendant, approached Davis from behind, went in the Mustang through the

14   driver's side, and reached for the gun.2

15   [footnote 2] In court, Davis temporarily recanted this portion of events because he was

16   "nervous" about specific audience members. He then corrected this testimony.

17   As Davis pulled defendant out of the vehicle, the men fought over the weapon.

18   Both had their hands on the firearm at one point and a round ejected from the
gun's chamber. Defendant gained control over the weapon, and defendant pointed

19   the gun directly at Davis.3  Davis then body-slammed defendant behind the

20   vehicle. Both men fell to the ground near some bushes.

21   [footnote 3] Davis initially testified at trial that he did not actually see a gun at any

22   point during the struggle, but later corrected his version to state that
defendant pointed a gun at Davis's head.

23

24   On the ground, the struggle for the gun continued. Davis landed on top of
defendant. Feeling a "sharp object" pressed into his side, Davis rolled off of

25   defendant because he did not want to "get shot." While Davis could not see the

26   object, he thought it was a gun. The two other men approached Davis and
defendant at this time. Defendant said to them, "If he move, kill him."

27   Defendant and the other two men then kicked and hit Davis in his back, face,

28

head, and side. During the assault, Davis lay on the ground with his eyes closed and feigned unconsciousness.

After the beating subsided, one man put an object to Davis's head and someone said, "If he moves, blow his head off." Davis also heard someone say, "Well, what should we do with his car?" and "[g]o through his pockets."

With the object still pressed to his head, Davis lay on the ground with his eyes closed when he heard his car start. After a few seconds, the individual holding the object to Davis's head ran off. Davis opened his eyes, stood up, and saw the Suburban drive off in the same direction as the Mustang.

Events After the Carjacking

After calling 911, Davis grabbed his girlfriend's car keys, got in her car, and drove off in search of his Mustang.

Davis found the Mustang stopped in the driveway of the apartment complex near the garbage dumpster; no one was around it. Shortly after, the Suburban drove up and two men jumped out of the Suburban and entered the Mustang. Davis believed that the two men went through his belongings located in the Mustang.

Meanwhile, responding police officer William Hancock drove into the apartment complex and Davis waved him down. Davis described the Suburban and recounted the events of the carjacking, including the taking of his Smith & Wesson handgun. Davis said that a man jumped into his car and grabbed his gun located on the front passenger seat.4

[footnote 4] When Officer Hancock spoke with Davis 15 minutes later, Davis also stated that defendant pointed the gun at Davis's head at one point during their altercation.

After receiving the description, Officer Hancock and other officers found the suspects in the Suburban, and chased them for three to five miles, whereupon the Suburban collided into a fire hydrant. Officers apprehended defendant when he tried to exit the front passenger window of the Suburban.

Property Located After the Carjacking

At the crash site, officers discovered the Smith & Wesson, Davis's handgun, underneath a passenger seat of the Suburban. Later, Detective Michael Darlington inspected the impounded Suburban and found, in the rear compartment of the center console, a loaded .25–caliber Beretta handgun, a wallet containing $362, an identification card with the name Anthony Miller, and a police citation

3

issued to Anthony Miller. Detective Darlington also found $46—the amount that
Davis said was in his wallet that night—on the rear driver's side seat and
Davis's wallet in the driver's side floorboard area.

Back at the apartment complex, officers recovered a Ruger handgun adjacent to
the bushes where the struggle between Davis and defendant occurred.

People v. Miller, 2013 WL 6048101 (Cal. App. 2013)

*AEDPA Standards*

The AEDPA standards do play a role in this case.  They are as follows.

The statutory limitations of federal courts' power to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  The text of § 2254(d) states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of,     clearly   established   Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in  light of the evidence presented in the State court proceeding.

As a preliminary matter, the Supreme Court has recently held and reconfirmed "that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'"  Harrington v. Richter, 131 S.Ct. 770, 785 (2011). Rather, "when a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."  Id. at 784-785, citing Harris v. Reed, 489 U.S. 255, 265, 109 S.Ct. 1038 (1989) (presumption of a merits determination when it is unclear whether a decision appearing to rest on federal grounds was decided on another sis). "The presumption may be overcome when there is reason to think some other explanation for the

1    state court's decision is more likely."  Id. at 785.

2         The Supreme Court has set forth the operative standard for federal habeas review of state

3    court decisions under AEDPA as follows:  "For purposes of § 2254(d)(1), 'an *unreasonable*

4    application of federal law is different from an *incorrect* application of federal law.'"  Harrington,

5    supra, 131 S.Ct. at 785, citing Williams v. Taylor, 529 U.S. 362, 410, 120 S.Ct. 1495 (2000).  "A

6    state court's determination that a claim lacks merit precludes federal habeas relief so long as

7    'fairminded jurists could disagree' on the correctness of the state court's decision."  Id. at 786,

8    citing Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S.Ct. 2140 (2004).

9         Accordingly, "a habeas court must determine what arguments or theories supported or . .

10   could have supported[] the state court's decision; and then it must ask whether it is possible

11   fairminded jurists could disagree that those arguments or theories are inconsistent with the

12   holding in a prior decision of this Court."  Id.  "Evaluating whether a rule application was

13   unreasonable requires considering the rule's specificity.  The more general the rule, the more

14   leeway courts have in reaching outcomes in case-by-case determinations.'"  Id.  Emphasizing the

15   stringency of this standard, which "stops short of imposing a complete bar of federal court

16   relitigation of claims already rejected in state court proceedings[,]" the Supreme Court has

17   cautioned that "even a strong case for relief does not mean the state court's contrary conclusion

18   was unreasonable."  Id., citing Lockyer v. Andrade, 538 U.S. 63, 75, 123 S.Ct. 1166 (2003).

19        The undersigned also finds that the same deference is paid to the factual determinations of

20   state courts.  Under § 2254(d)(2), factual findings of the state courts are presumed to be correct

21   subject only to a review of the record which demonstrates that the factual finding(s) "resulted in a

22   decision that was based on an unreasonable determination of the facts in light of the evidence

23   presented in the state court proceeding."  It makes no sense to interpret "unreasonable" in §

24   2254(d)(2) in a manner different from that same word as it appears in § 2254(d)(1) – i.e., the

25   factual error must be so apparent that "fairminded jurists" examining the same record could not

26   abide by the state court factual determination.  A petitioner must show clearly and convincingly

27   that the factual determination is unreasonable.  See Rice v. Collins, 546 U.S. 333, 338, 126 S.Ct.

28   969, 974 (2006).

1    The habeas corpus petitioner bears the burden of demonstrating the objectively

2    unreasonable nature of the state court decision in light of controlling Supreme Court authority.

3    Woodford v. Viscotti, 537 U.S. 19, 123 S. Ct. 357 (2002).  Specifically, the petitioner "must

4    show that the state court's ruling on the claim being presented in federal court was so lacking in

5    justification that there was an error well understood and comprehended in existing law beyond

6    any possibility for fairminded disagreement."  Harrington, supra, 131 S.Ct. at 786-787.  "Clearly

7    established" law is law that has been "squarely addressed" by the United States Supreme Court.

8    Wright v. Van Patten, 552 U.S. 120, 125, 128 S.Ct. 743, 746 (2008).  Thus, extrapolations of

9    settled law to unique situations will not qualify as clearly established.  See e.g., Carey v.

10   Musladin, 549 U.S. 70, 76, 127 S.Ct. 649, 653-54 (2006) (established law not permitting state

11   sponsored practices to inject bias into a criminal proceeding by compelling a defendant to wear

12   prison clothing or by unnecessary showing of uniformed guards does not qualify as clearly

13   established law when spectators' conduct is the alleged cause of bias injection).  The established

14   Supreme Court authority reviewed must be a pronouncement on constitutional principles, or other

15   controlling federal law, as opposed to a pronouncement of statutes or rules binding only on

16   federal courts.  Early v. Packer, 537 U.S. 3, 9, 123 S. Ct. 362, 366 (2002).

17   The state courts need not have cited to federal authority, or even have indicated awareness

18   of federal authority in arriving at their decision.  Early, supra, 537 U.S. at 8, 123 S.Ct. at 365.

19   Where the state courts have not addressed the constitutional issue in dispute in any reasoned

20   opinion, the federal court will independently review the record in adjudication of that issue.

21   "Independent review of the record is not de novo review of the constitutional issue, but rather, the

22   only method by which we can determine whether a silent state court decision is objectively

23   unreasonable."  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).

24   Finally, if the state courts have not adjudicated the merits of the federal issue, no

25   AEDPA deference is given; the issue is reviewed *de novo* under general principles of federal law.

26   Stanley v. Cullen, 633 F.3d 852, 860 (9th Cir. 2012).  However, when a state court decision on a

27   petitioner's claims rejects some claims but does not expressly address a federal claim, a federal

28   habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the

6

1    merits.  Johnson v. Williams, ___ U.S. ___, 133 S.Ct. 1088, 1091 (2013).

2    *Discussion*

3         Insufficient Evidence Standards

4         When a challenge is brought alleging insufficient evidence, federal habeas corpus relief is

5    available if it is found that upon the record evidence adduced at trial, viewed in the light most

6    favorable to the prosecution, no rational trier of fact could have found "the essential elements of

7    the crime" proven beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct.

8    2781, 61 L.Ed.2d 560 (1979).  Jackson established a two-step inquiry for considering a challenge

9    to a conviction based on sufficiency of the evidence.  United States v. Nevils, 598 F.3d 1158,

10   1164 (9th Cir. 2010) (en banc).

11         First, a reviewing court must consider the evidence presented at
12   trial in the light most favorable to the prosecution.  Jackson, 443
     U.S. at 319, 99 S.Ct. 2781. . . [W]hen "faced with a record of
13   historical facts that supports conflicting inferences" a reviewing
     court "must presume—even if it does not affirmatively appear in
14   the record—that the trier of fact resolved any such conflicts in favor
     of the prosecution, and must defer to that resolution."  Id. at 326, 99
15   S.Ct. 2781; see also McDaniel, 130 S.Ct. at 673–74.

16         Second, after viewing the evidence in the light most favorable to
     the prosecution, the reviewing court must determine whether this
17   evidence, so viewed, is adequate to allow "any rational trier of fact
     [to find] the essential elements of the crime beyond a reasonable
18   doubt."  Jackson, 443 U.S. at 319, 99 S.Ct. 2781.

19         [¶] . . .[¶]

20         At this second step, we must reverse the verdict if the evidence of
     innocence, or lack of evidence of guilt, is such that all rational fact
21   finders would have to conclude that the evidence of guilt fails to
     establish every element of the crime beyond a reasonable doubt."
22   See id.

         Id. at 1164–65.
23

24   And, where the trier of fact could draw conflicting inferences from the facts presented, one

25   favoring guilt and the other not, the reviewing court will assign the one which favors conviction.

26   McMillan v. Gomez, 19 F.3d 465, 469 (9th Cir. 1994).  However, the mere fact that an inference

27   can be assigned in favor of the government's case does not mean that the evidence on a disputed

28   crime element is sufficient—the inference, along with other evidence, must demonstrate that a

                                            7

1   reasonable jury could find the element beyond a reasonable doubt, i.e., "'[A] reasonable inference

2   is one that is supported by a chain of logic, rather than mere speculation dressed up in the guise of

3   evidence.'"  United States v. Katakis, 800 F.3d 1017, 1024 (9th Cir. 2015).

4          Superimposed on these already stringent insufficiency standards is the AEDPA

5   requirement that even if a federal court were to initially find on its own that no reasonable jury

6   should have arrived at its conclusion, the federal court must actually determine that the state

7   appellate court could not have affirmed the verdict under the Jackson standard in the absence of

8   an unreasonable determination.  Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir. 2005).

9          A federal habeas court determines sufficiency of the evidence in reference to the

10   substantive elements of the criminal offense as defined by state law.  See Jackson, 443 U.S. at

11   324 n. 16; Chein v. Shumsky, 373 F.3d 978, 983 (9th Cir. 2004) (en banc).

12          Insufficiency of Evidence—Intent to Carjack

13          Petitioner does not take issue with the facts as set forth by the Court of Appeal; rather,

14   petitioner posits that under those facts a reasonable jury could not find the required intent to

15   carjack at the time such intent was required.  The analysis of the Court of Appeals follows:

16      Carjacking is defined, as pertinent here, as the "the felonious taking of a

17      motor vehicle in the possession of another, from his or her person or immediate
        presence ... against his or her will and with the intent to either permanently

18      or temporarily deprive the person in possession of the motor vehicle of his or
        her possession, accomplished by means of force or fear." (§ 215, subd. (a).) The

19      requisite intent must be formed before or during the use of force or fear.

20      (People v. Gomez (2011) 192 Cal.App. 4th 609, 618, 622.) Defendant contends the
        evidence is insufficient that he had the requisite intent before or at the time

21      he applied force against Davis.

22

23      Having just expounded the evidence, it is unnecessary to recite it again here.
        Rather, we are satisfied that a reasonable trier of fact could have found beyond

24      a reasonable doubt that defendant formed the intent to permanently or
        temporarily deprive Davis of his Mustang before or during the use of force or

25      fear. "Intent is rarely susceptible of direct proof and usually must be inferred

26      from the facts and circumstances surrounding the offense." (People v. Pre (2004)
        117 Cal.App.4th 413, 420.)

27

28

8

1
2
3
4
5
6
7
8

> The evidence included the statement "nice car," which occurred just before the men and defendant assaulted Davis. A reasonable juror could have found that defendant formed the intent to deprive Davis of the Mustang at that moment. Or, a reasonable juror could have found that defendant formed the requisite intent when approaching Davis from behind, creating the inference that defendant was about to knowingly engage in malicious or illegal behavior. Or, a reasonable juror could have found that defendant formed the requisite intent while assaulting Davis, as demonstrated by the discussion about what to do with the Mustang. Accordingly, we conclude the jury could readily infer from the entire sequence of events that defendant intended to deprive Davis of the possession of his car before or during the use of force or fear—the assault.

9
10
11
12

> Defendant's contention that he merely formed the intent to deprive Davis of his smaller, personal possessions, and not his car, is without merit. While this is a possible inference, this is not what the jury reasonably concluded. Defendant simply asks us to reweigh the evidence. That we cannot do. Viewing the evidence in the light most favorable to the judgment, we find there is sufficient evidence that defendant committed carjacking.

13

14   People v. Miller, 2013 WL 6048101 at *3.

15          The first two bases for the Court of Appeal's sufficiency conclusions are rather sketchy.

16   The only evidence referencing intent *to steal the car* at these two stages *by this defendant* was the

17   anonymous comment—"nice car."  These conclusions are especially tenuous in light of the later

18   query by one of the co-assailants about-- what to do with the car.  The later taking of personal

19   possessions and the struggle with Davis, or approaching Davis from behind, does nothing to

20   distinguish a garden variety robbery from a carjacking.  Indeed, this order of events makes the

21   forming of the requisite instant at these times less likely.  Again, a reviewing court does not

22   simply abdicate its role in assessing the sufficiency of the evidence simply because an inference

23   of intent to carjack is permissible; it must be an inference, when combined with other evidence of

24   intent, that is *sufficient*, i.e., a reasonable jury could find intent to carjack beyond a reasonable

25   doubt.

26          However, the undersigned need not launch an analysis whether the above findings by the

27   Court of Appeal were AEDPA unreasonable because in any event, the third basis for finding

28   intent to carjack is unassailable.  There can be little doubt that at the time defendants, including

9

1    *this petitioner*, were discussing taking the car, and then actually taking it, Davis was under the

2    force and fear necessary to meet the statutory criteria.  That is, by definition, the defendants

3    exhibited the intent to take the car, and deprive Davis of possession, because they ultimately took

4    it in such a fashion that a reasonable jury could so find, at which time force was being inflicted on

5    Davis, and at which time he was clearly under great fear.

6          This claim should be denied.

7          Insufficient Evidence- Unlawful Possession of a Weapon[1]

8          The Court of Appeal reasoned:

9

10         Defendant next claims there is insufficient evidence that he "possessed" the
           Beretta handgun (count six). We disagree.

11

12         The applicable statute, former section 12021, subdivision (a)(1), provides, "Any
           person who has been convicted of a felony ... and who ... has in his or her

13         possession or under his or her custody or control any firearm is guilty of a
           felony." Defendant and the People stipulated that defendant was previously

14         convicted of a felony.

15

16         Possession need not be actual or exclusive. (*People v. Rushing* (1989) 209
           Cal.App.3d 618, 622.) "A defendant possesses a weapon when it is under his

17         dominion and control." (*People v. Peña* (1999) 74 Cal.App.4th 1078, 1083.)
           "[P]ossession may be imputed when the contraband is found in a place which is

18         immediately and exclusively accessible to the accused and subject to his
           dominion and control, or to the joint dominion and control of the accused and

19         another." (*People v. Newman* (1971) 5 Cal.3d 48, 52.) The elements of possession

20         may be established by "circumstantial evidence and any reasonable inferences

21         drawn from such evidence." (*People v. Harrington* (1970) 2 Cal.3d 991, 998.)

22         The evidence shows that the Beretta was in the rear compartment of the

23         Suburban's center console. An identification card and a citation, both with
           defendant's surname, "Miller," were also located in this center console (in a

24         wallet). Defendant sat in the front passenger seat of the Suburban. A reasonable

25         trier of fact could conclude that defendant placed his possessions, the Beretta
           and the wallet, in the console because it was within his immediate reach. Such

26         evidence "establish[es] a chain of circumstances from which defendant's

27         knowledge and actual or constructive possession or control of the firearm could

---

28   [1]  Petitioner challenges only that count which involved the Beretta pistol found in the Suburban.

1   be readily inferred supporting a finding of guilt." (*People v. Cordova* (1979) 97

2   Cal.App.3d 665, 670.)

3   Defendant's argument that the record lacks "any fact" to establish possession is

4   overstated. Such facts—the wallet, identification card, citation, and access to

    the gun—were considered by the jury, and in conducting sufficiency of the

5   evidence review, we are guided by the rule that "it is the jury, not the

    appellate court which must be convinced of the defendant's guilt beyond a

6   reasonable doubt." (*People v. Bean* (1988) 46 Cal.3d 919, 933.)

7

8   Defendant's reliance on *In re Anthony J.* (2004) 117 Cal.App.4th 718 is

    misplaced. In *Anthony J.*, the court found insufficient evidence to sustain a

9   conviction of possession of a stolen vehicle. (*Id*. at p. 728.) The court applied

    the familiar rule that possession of stolen property requires "something more"

10  than mere presence or access, but that "something more" may be rather slight.

11  (*People v. Land* (1994) 30 Cal.App.4th 220, 224.) Here, defendant is not charged

    with possessing a stolen Beretta; defendant is charged with possessing a firearm

12  as a convicted felon. Even if this standard were appropriate, the evidence

13  previously discussed shows "something more" than mere presence or access.

14  People v. Miller,  2013 WL at 3-4.

15      The undersigned cannot add anything significant to this analysis.  Under any view of

16  AEDPA reasonableness, the Court of Appeal's conclusion must be upheld.

17          Sua Sponte Instruction on Lesser Offense

18      Petitioner claims that the jury should have been instructed, on the court's own initiative,

19  on the lesser included theory of simple assault.  The theory was not advanced by defense counsel,

20  and for good reason—the facts belie the assertion.  In this circumstance, as observed by

21  respondent, the failure to instruct *sua sponte* claim fails to state a cognizable claim in federal

22  habeas corpus.  Solis v.Garcia, 219 F.3d 922, 929 (9th Cir. 2000); Bashor v. Risley, 730 F.2d

23  1228, 1240 (9th Cir. 1984).

24  *Conclusion*

25      Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Cases, this court must

26  issue or deny a certificate of appealability when it enters a final order adverse to the applicant.  A

27  certificate of appealability may issue only "if the applicant has made a substantial showing of the

28  denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  For the reasons set forth in these

11

1  findings and recommendations, a substantial showing of the denial of a constitutional right has

2  not been made in this case.

3       Accordingly, IT IS HEREBY RECOMMENDED that:

4       1.  The petition for habeas corpus be denied.

5       2.  No Certificate of Appealability should issue.

6       These findings and recommendations are submitted to the United States District Judge

7  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days

8  after being served with these findings and recommendations, any party may file written

9  objections with the court and serve a copy on all parties.  Such a document should be captioned

10  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

11  shall be served and filed within fourteen days after service of the objections.  The parties are

12  advised that failure to file objections within the specified time may waive the right to appeal the

13  District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

14  DATED: December 14, 2015

15                  /s/ Gregory G. Hollows

16              UNITED STATES MAGISTRATE JUDGE

17

18

19

20

21

22

23

24

25

26

27

28